### BOYCE et al. v. SEMAPHORIC INDICATOR CO. et al.

District Court, N. D. Illinois, E. D.   June 3, 1926.

No. 3852.

Patents ⬯328.

Boyce patent, No. 1,090,776, for indicating system and apparatus for internal combustion engines, *held* valid and infringed.

In Equity. Patent infringement suit by Harrison H. Boyce and another against the Semaphoric Indicator Company and another. Decree for plaintiffs.

Edmund Quincy Moses, of New York City, and Rector, Hibben, Davis & Macauley, of Chicago, Ill., and Charles Neave, of New York City, for plaintiffs.

Rummler & Rummler, of Chicago, Ill., for defendants.

CLIFFE, District Judge. The bill of complaint in this case was filed February 7, 1924, and is a suit in equity for infringement or threatened infringement of letters patent of the United States No. 1,090,776, granted to Harrison H. Boyce March 17, 1914, for indicating system and apparatus for internal combustion engines.

The bill avers that prior to January 3, 1913, Harrison H. Boyce was the inventor of the invention described in the letters patent hereinabove mentioned; that he applied for letters patent for said invention, and the letters patent thereunder issued bear date March 17, 1914, and are numbered 1,090,776; that said Boyce, as the original inventor of said patented device, sold to George H. Townsend, II, the exclusive license to make, use, and sell said invention throughout the United States, by the terms of which license said Townsend had the right to assign the same to a corporation to be organized by him; that the said Townsend, in the exercise of said right, thereafter caused to be organized the Moto Meter Company, Incorporated, plaintiff herein, of which said company the said Townsend is president, which company engaged in the manufacture and sale of the invention of the patent in suit, pursuant to the terms of said license, so assigned by said Townsend, and is still so engaged therein. The said plaintiff Moto Meter Company contends that it has duly marked all devices, manufactured and sold by it in accordance with said letters patent 1,090,776, "Patented March 17, 1914," and complied with the statute in specifically notifying the defendants of the existence thereof.

It is further averred that the defendants herein are related corporations, having some common officers, and that the defendant Semaphoric Indicator Sales Company acts as sales representative for the defendant Semaphoric Indicator Company in the sale of the alleged infringing devices manufactured by the last-named defendant. This action is based on claims 1 to 5, inclusive, of the patent in suit, as follows:

"1. In a system for indicating abnormal conditions in an internal combustion engine having a liquid circulation cooling system for the cylinders of the engine, the combination with means forming an inclosed space above the level of the circulating liquid, of an indicating device having a temperature responsive element normally permanently so located with reference to said inclosing means as to respond to temperature changes in said inclosed space and means controlled by said element for giving a temperature change indication outside said space.

"2. In a system for indicating abnormal conditions in an internal combustion engine provided with a liquid circulation cooling system for the cylinders of the engine, said cooling system including a radiator having an air space at the top thereof, the combination with the radiator of an indicating device having an indicating part outside the radiator and having a temperature responsive element controlling the operation of said indicating part and exposed to the temperature in said air space above the level of the liquid in the radiator and means for maintaining the temperature responsive element in place in the radiator during the normal operation of the engine.

"3. In a system for indicating abnormal conditions in an internal combustion engine provided with a liquid circulation cooling system for the cylinders of the engine, said cooling system including a radiator having an air space therein above the level of the circulating liquid and having a filler opening closed by a cap, the combination with the radiator and cap of an indicating device normally permanently mounted on said cap and having a normally visible indicating part and a temperature responsive element controlling the operation of said indicating part and exposed to temperatures within the air space.

"4. In a system for indicating abnormal conditions in an internal combustion engine provided with a liquid circulation cooling system for the cylinders of the engine, said cooling system including a radiator having an air space therein above the level of the circulating liquid, the combination with the

radiator of an indicating device normally permanently carried by said radiator and comprising an exposed protective casing, a visible indicating part in said casing, and a temperature responsive element controlling the operation of said indicating part and normally located in the air space in the radiator.

"5. In a system for indicating abnormal conditions in an internal combustion engine provided with a liquid circulation cooling system for the cylinders of the engine, said cooling system including a radiator having an air space therein above the level of the circulating liquid and having a filler opening closed by a cap, the combination with the radiator and cap of an indicating device normally permanently attached to said cap and comprising an exposed protective casing, an indicating part in said casing and a temperature responsive element controlling the operation of said indicating part and normally located in the air space in said radiator."

Several defenses are made, and a counterclaim asking for certain relief, and answer thereto, have been filed herein. Defendants set up that the said patent 1,090,776 is invalid, and raise the defense or defenses of prior uses, prior knowledge, prior printed publications, and prior patents.

The plaintiffs refer to the case of Boyce v. Stewart-Warner Speedometer Corporation, Circuit Court of Appeals, Second Circuit, decided December 15, 1914, reported in 220 F. 118, in which the court had before it an order entered by the District Court of the United States for the Southern District of New York, granting a preliminary injunction restraining defendant therein from an alleged threatened infringement of the patent involved in this suit, and the court in its opinion, after referring to the objections to the invention as set forth in the specifications in the patent, says:

"The complainant's device embodies the idea primarily of affording protection against the great evil of engine overheating, for which previously there had existed no remedy. It also provides an indication to the operator of the thermal condition of his engine. Both of these results are accomplished by the use of a temperature responsive device located in the air space at the top of the radiator of the engine cooling system. * * * This indication is not of exact water temperatures, but shows changes in thermal condition. When the point of danger is reached and steam is formed in the radiator, the instrument affords an unmistakable trouble signal.

This is due to the peculiar organization of the apparatus whereby the temperature responsive element or thermometer normally indicates a lower, but substantially proportional, temperature with relation to the water temperature which jumps to the actual temperature upon the occurrence of dangerous conditions."

The device referred to by the court in that case was called the Stewart radiator meter, which the court stated is an instrument of exactly the same characteristics as the Boyce motometer, the patent in suit here. The court says further (page 120): "Like the Boyce motometer, it is designed to be attached to the radiator cap of an automobile, and it has an indicator which provides temperature readings visible from the driver's seat. The indicator is governed by a temperature responsive element which differs from that in plaintiff's device in length by about one-half an inch, which projects downwardly through the radiator cap exactly as does the Boyce device."

Up to this time—that is, up to the time of the decision in the Stewart-Warner Speedometer Case—the court said: "In the case at bar, there has been no prior adjudication of the validity of patent." And on page 123 says: "The defendant claimed that the Boyce patent was void because as issued it was for an invention entirely different from that presented in the application originally filed. An applicant must in his application describe not merely the principle of his invention, but the best mode in which he contemplates applying the principle, and he must describe the means he proposes to employ in such full, clear, and exact terms as will make it possible for those skilled in the art without other aid to make and use the invention."

The court further says: "It appears that changes were made in the specification of the application resulting in the patent in suit. These changes tended to greater clearness and fuller explanation of the invention, and thus made the patent as issued more valuable to the public as a disclosure of the patented invention. But we are unable to discover that the patent as issued is not the identical invention which Boyce described in his application as filed. Both the specification and drawing of the application as filed clearly show that the temperature responsive element or thermometer was mounted, and was intended to be mounted, in the air space at the top of the radiator, and not in the water in the radiator. * * * The temperature of the air space does correspond with the

temperature of the water temperature. It is this fact which gives to Boyce's device the great advantages it possesses and causes it to operate in the novel manner it does."

And the court, in the conclusion of its opinion, says: "If we entertained a doubt as to the utility of this device, or as to its having been anticipated by the prior knowledge and use, or as to its being a different invention from that originally disclosed and claimed in the application on which the patent was granted, we should think an abuse of discretion had been committed in granting an injunction before final hearing. But being convinced as we are in respect to these matters, we see no reason to think that the court abused its discretion in awarding the injunction." The order granting the preliminary injunction was accordingly affirmed.

In the so-called Pyrene Manufacturing Co. Case, wherein the present plaintiffs brought suit against the last above named company, and in which on final hearing the court held that the patent involved in the instant case was infringed by an instrument such as shown in Plaintiffs' Exhibit 5 in this case, which had a bimetallic thermal responsive element, the decision of the New Jersey court was affirmed by the Circuit Court of Appeals of the Third Circuit, reported in 292 F. 480, wherein the District Court of Appeals, by Woolley, Judge, sets out verbatim claim 2 of the patent in suit, which is the patent in suit here, and in commenting on said claim 2, says:

"The respondent says that this claim, stripped of its technical wording, discloses nothing more than a thermometer stuck through the radiator cap of an automobile. On first view this would seem to be true. It further urges that the only function of the thermometer, so positioned, is the ordinary one of showing the temperature inside. This would seem to be obvious. * * * But on closer examination of the patent it appears that a purpose is intended, and, by reason of the particular location of the device, a result is obtained different from and definitely more useful than the mere registration of heat."

Further, the court, talking on the question of the validity of the patent, says: "Invention is a concept; a thing evolved from the mind. It is not a revelation of something which exists and was unknown, but is the creation of something which did not exist before, possessing the elements of novelty and utility in kind and measure different from and greater than what the art might expect from its skilled workers."

And on page 482 further says: "Postponing for later discussion the question of prior use, we shall here dispose of any question of anticipation by prior patents by announcing our conclusion, in harmony with that of the Circuit Court of Appeals for the Second Circuit in Boyce v. Stewart-Warner Speedometer Corporation, 220 F. 118, 136 C. C. A. 72, that all references having to do with temperature indicators whose parts are immersed in the circulating fluid or attached to the machinery itself are so different in construction and mode of operation from that of the patent that they play no part in the case. We are also in accord with the Circuit Court of Appeals for the Second Circuit that, before the invention in suit, there was no thermal indicating device shown by the evidence which was positioned in a like air space below the opening of the radiator and which depended upon the temperature to which it was there exposed as the source of the information which it carried above and disclosed. We have paused to lay stress on the position of the lower extremity of the thermometer in the air space above the level of the liquid in the radiator because, if there is invention in the system and apparatus of the patent, it must be found in the selection of the air space of the radiator inlet as the place for the novel behavior of the thermometer."

Quoting further from the opinion, on page 483, the court says: "The center of the invention, therefore, is the selection of the air space or pocket within the inlet of the radiator, by which alone the requisite sudden action is given to the thermometer." And on page 484: "We are satisfied that the claims of the patent are not limited merely to a 'temperature responsive element,' or, in other words, to a thermometer, placed indifferently in a cooling system, but that they embody the novel idea of a thermometer positioned in a new place, where, by reason of the characteristics of the place, the thermometer, even if functioning in an old way, is caused to do a new thing. In this functioning of the thermometer, where speed in the rise of temperature and its consequent danger signal are the things sought and obtained, utility is obvious."

And, after commenting on the question of prior public use, the court says: "It clearly appears that the several users did not intend, and did not observe in their devices, the things intended and accomplished by the device of the patent in suit. * * * In other words, they did not have Boyce's inventive conception, and, failing to have it,

they abandoned their devices before they had passed the stage of experimentation."

The court, in concluding its opinion, said: "We are of opinion that the novelty of the invention of the patent has not been negatived by prior use, and that accordingly the patent is valid"—and the judgment of the court below was affirmed.

The court's attention has been called to a number of proceedings in the various circuits involving the patent in suit here, as, for instance, the Superior Brass Mfg. Co. Case, a suit in New Jersey directed against an instrument illustrated by Plaintiff's Exhibit 4, where a preliminary injunction was granted without substantial opposition; the Biddle Purchasing Company Case, also a suit in New Jersey, where a final decree granting an injunction was had; also the Manufacturers' Auto Supply Company Case, a suit in New Jersey, against the same instrument involved in the present suit, and its courts was the same as that in the Biddle Company Case; the Standard Supply & Equipment Company Case, a New Jersey suit directed against the instrument in suit here, wherein motion for preliminary injunction was made, and affidavits filed by both parties and depositions of various parties, Clippinger, Blood, Gipe, Waite, Albaugh, and Mrs. Emma Albaugh, later used in the Gide Lite suit, and also used in this suit, and the motion and preliminary injunction were granted; also the Gide Lite Manufacturing Company suit, directed against instrument illustrated by Plaintiffs' Exhibit 6, wherein affidavits were filed and depositions referring to the Albaugh alleged prior use filed, Judge Wilkerson granting the injunction; the Sunbeam Company suit, in Wisconsin, against form of instrument illustrated by Plaintiffs' Exhibit 5, with motion for injunction filed, and final decree by consent; Electro Chemical Refineries Corporation Case, a suit in this district against the arrometer instruments illustrated by Plaintiffs' Exhibit 7, with motion for preliminary injunction made and argued before Judge Carpenter in 1925, and injunction granted.

It therefore appears that there has been one final hearing, which went to the Circuit Court of Appeals for the Third Circuit, a rehearing and a petition for certiorari denied, and a contempt motion granted; one preliminary injunction, which went to the Circuit Court of Appeals for the Second Circuit; one contested preliminary injunction motion in New Jersey against the same instrument as that here in suit; three contested preliminary injunction motions, two of which were in this court; and four cases in which preliminary injunction motions or final decrees were entered without opposition.

This court can find no new issues or material evidence involved in the present suit, other than was considered in the cases referred to, and, following the rule of comity as this court construes it, the court finds that the patent in suit is valid and infringed, and a decree should be prepared accordingly.